UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRICK ENTERPRISES, INC.,                  Case No. 07-15081

          Plaintiff,                               HONORABLE SEAN F. COX
                                                              United States District Judge
v.

CRESCENT PETROLEUM, INC.
et al.,

          Defendants.
_____/

OPINION & ORDER DENYING DEFENDANT'S MOTION
TO VACATE ARBITRATION AWARD [Doc. No. 17]

Plaintiff Barrick Enterprises, Inc. ("Barrick") filed this breach of contract action against Defendants Crescent Petroleum, Inc. ("Crescent"), and Crescent owners Bassell El-Bathy and Mohammed El-Bathy (collectively, "the Defendants") in the Oakland County, Michigan Circuit Court on October 4, 2007. Citing counterclaims under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq*., the Defendants removed the action to this Court on November 29, 2007. Subsequently, the parties agreed to arbitrate their claims, resulting in an award of $281,734.07 in favor of Barrick. The matter is currently before the Court on the Defendants' Motion to Vacate Arbitration Award [Doc. No. 17]. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2). For the reasons that follow, the Court **DENIES** the Defendants' motion [Doc. No. 17].

BACKGROUND

On or about February 9, 2005, Crescent and the El-Bathys entered into a Sales Agreement

1

with Barrick, whereby Barrick agreed to supply Crescent with gasoline at its Madison Heights, Michigan location. [*See* Def.'s Ex. 1, Doc. No. 17].

On October 4, 2007, Barrick filed suit against Crescent in the Oakland County, Michigan, Circuit Court, alleging that Crescent had breached the Sales Agreement by failing to pay for delivered gasoline. [*See* Def.'s Ex. 2, Doc. No. 17]. Barrick also recorded a Notice of *Lis Pendens* on October 7, 2007 with the Oakland County Register of Deeds against Crescent's Madison Heights, Michigan property based on the lawsuit.

Crescent filed a Notice of Removal [Doc. No. 1] on November 29, 2007, counter-claiming violations by Barrick of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq*. On February 22, 2008 the parties subsequently agreed to dismiss certain of their claims against each other, and to submit the remainder of their claims to arbitration. [*See* Doc. No. 6].

Specifically, the parties agreed to submit their claims to a Certified Public Accountant at the accounting firm of UHY Advisors, MI, Inc. to render an opinion using generally accepted accounting principles as to the amount of money owed or, in the alternative, the amount of money overpaid, between the parties. [*See* Arbitration Order, Doc. No. 6, p.3]. The Arbitration Order further provided that the scope of the arbitration was to be limited to the evaluation and determination of the account balance between the parties. *Id*. at p.4, ¶ 1. The parties also agreed that the "Arbitrator's decision and award shall be deemed binding and final as to any claim of liability and damages between the parties related to the Account Balance." *Id*. at p.6, ¶ 5.

A descriptive list of the documents the parties submitted to the Arbitrator was included in the Arbitrator's findings dated August 15, 2009 [*See* Def.'s Ex. 8]. In order to gain further understanding of these documents, the Arbitrator contacted counsel for both parties and

scheduled separate interviews with a member of each party's organization to explain their accounting procedures. These interviews were conducted outside the presence of counsel, but were held with prior notice to counsel for both parties. Neither party's counsel objected to this arrangement. The Arbitrator met with Barrick's Controller, Vickie Morton, on May 11, 2009, and with Crescent's owner and operator, Bassel El-Bathy, on May 13, 2009. *Id*. at p.3.

Three primary issues were presented to the Arbitrator by the parties: 1) a verification of the account balances owed to Barrick by Crescent; 2) the potential existence of fuel overcharging to Crescent by Barrick; and 3) Crescent's contention that Barrick had billed Crescent for approximately 25,291 gallons of fuel which were never delivered.

In the August 15, 2009 Arbitration Award, after considering all of the evidence provided by the parties, the Arbitrator concluded as follows: 1) that Crescent is liable to Barrick for $379,239.00 for unpaid deliveries of fuel; 2) that Barrick is liable to Crescent for $97,505.53 in excessive fuel unit charges; and 3) that the evidence provided to the Arbitrator did not support Crescent's contention that it had been billed for 25,291 gallons of fuel that were never received.

After the August 15, 2009 Arbitration Award was rendered, the parties each engaged in several rounds of correspondence with the Arbitrator in an attempt to clarify the Arbitrator's rulings. After this process, the final arbitration award was made by the Arbitrator on January 3, 2010. Three months later - on March 3, 2010 - the Defendants filed their instant motion to vacate the arbitration award. [*See* Doc. No. 17]. Barrick opposes the Defendants' motion. [*See* Doc. No. 18].

STANDARD OF REVIEW

The parties' rights in arbitration are governed by the Federal Arbitration Act, 9 U.S.C. § 1

*et seq*. In accordance with 9 U.S.C. § 10(a), this Court may only vacate an arbitration award in the following instances:

> (1) where the award was procured by corruption, fraud, or other means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of *any other misbehavior by which the rights of any party have been prejudiced*; or
> (4) *where the arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis added).

There is a presumption in favor of an arbitration award's validity. "[C]ourts play only a limited role when asked to review the decision of an arbitrator." *Tenn. Valley Authority v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam). "A Court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (internal citations and quotations omitted); see also *Fed. Dep't Stores, Inc. v. J.V.B. Industries, Inc.*, 894 F.2d 862, 866 (6th Cir. 1990) ("the role of courts in reviewing arbitration awards is extremely limited.").

## ANALYSIS

In their motion to vacate the arbitration award [Doc. No. 17], the Defendants advance two primary arguments: 1) that the Arbitrator's purported "ex parte" communications with Morton, a Barrick employee, prejudiced the Defendants; and 2) that the Arbitrator rejected their 25,291 gallon fuel discrepancy argument under an improper evidentiary standard and that it constituted

4

an improper expert opinion. [*See* Doc. No. 17, pp.20-28]. In addition to refuting the Defendants arguments, Barrick argues that the Defendants' motion should be denied as untimely. [*See* Doc. No. 18, pp.6-7]. The Court will consider each of these arguments in turn.

I. The Timely Filing of Defendants' Motion to Vacate.

Barrick argues that the Defendants were not timely in the filing of the instant motion pursuant to the FAA's requirement that a "notice of a motion to vacate, modify or correct an award muse be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The Court disagrees.

In order to be final, an arbitration award must be intended by the arbitrator to be a complete determination of all claims and, generally, must have decided the issues of liability and damages. *See Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2d Cir. 1980). Barrick argues that the award was final on August 15, 2009 - the date the arbitrator issued its "Arbitration Findings on the Account Balance." [Pl.'s Br., Doc. No. 18, p.7]. Therefore, under Barrick's argument, the Defendants' instant motion is untimely.

While the arbitrator's initial findings were released to the parties on August 15, 2009, the final award was not released until January 8, 2010 - exactly three months *to the day* before this motion was filed. [*See* Def.'s Br., Doc. No. 17, p.8]. Subsequent to the August 15, 2009 report, both Barrick and Crescent submitted written inquiries to the Arbitrator seeking clarification or modification of the Arbitrator's findings. [*See* Def.'s Exs. 9, 10, Doc. No. 17]. The Arbitrator responded to those written inquiries in his January 8, 2010 award.

In opposition to Barrick's argument on this issue, the Defendants argue as follows:

Most telling is the fact that the Arbitrator accepted new evidence from the parties

5

to consider after the August 15, 2009 decision. If the Arbitrator deemed its work to be completed on August 15, 2009, the Arbitrator would simply have issued correspondence explanation that its decision was final. The Arbitrator would not have spent close to three months examining new evidence and responding to new claims from Barrick and Crescent.

[Def.'s Reply, Doc. No. 20, p.3]. The Court agrees. While there is no statute that tells courts "when an award is ripe for judicial enforcement or review," "where an arbitrator believes the assignment is completed, the award is final and appealable." *Wellpoint Health Networks, Inc. v. John Hancock Life Ins. Co.*, 547 F.Supp.2d 899, 908 (N.D. Ill. 2008). However, "[w]here the evidence establishes that the arbitrator does to believe the assignment is completed, the award is not final and appealable." *Id*.

On the evidence presented by the parties, the Court holds that the Arbitrator did not deem his "assignment" completed until the release of the January 8, 2010 Award. Therefore, the Court holds that the Defendants' motion to vacate was timely filed, and will reach the merits of the Defendants' motion.

II. The Arbitrator's Claimed Ex Parte Communications.

In support of their motion [Doc. No. 17], the Defendants argue that the Arbitrator's decision should be vacated due to what the Defendants argue amounts to unauthorized, ex parte communications between the Arbitrator and Morton, an employee of Barrick. In support of this argument, the Defendants rely primarily upon the following language from the Arbitration Order [Doc. No. 6]:

> The arbitrator shall be free to direct questions and request documents or records from the parties as may be needed to evaluate and render a final determination of the Account Balance so long as any such questions or requests, and the subject disclosures thereto, are disclosed to the opposing party.

[Doc. No. 6, p.5, ¶4]. As the Arbitrator interviewed Ms. Morton, a Barrick employee, on May 11, 2009 outside the presence of counsel [*see* Def.'s Ex. 8a, Doc. No. 17, p.3], the Defendants argue that the entirety of the Arbitrator's decision should be set aside:

> Crescent has no idea what Ms. Morton testified to, and had not opportunity [*sic*] to cross-examine her.  It is also unknown whether any of the questions exceeded the limitations of the Arbitration Order that governed the Arbitration.  The entire purpose of the Arbitration performed by a Certified Public Accountant was to have the findings based on financial documents and for the parties to be afforded transparency in the proceedings.  This did not occur.
>
> Crescent was severely prejudiced by the inability to cross-examine Ms. Morton on any of her testimony or even to be privy to it.  Crescent was further prejudiced because Ms. Morton's testimony is presumably biased in favor of her employer, and Crescent was unable to rebut any of her testimony or interpretations of any of the documents.  Ms. Morton's testimony was requested after the Arbitrator had reviewed all the financial documents.  It is evident that Ms. Morton's input played a significant role in the Arbitrator's final decision.  The Arbitrator did not invite counsel for Crescent to the proceedings nor did he share any aspect of her testimony with Crescent's Counsel.

[Def.'s Br., Doc. 17, p.21].

The Court disagrees.  As Barrick argues in opposition to the Defendants' motion, "[t]his arbitration process now complained of by Defendants was not the result of misconduct on the party of the [Arbitrator], but rather was agreed to by the parties themselves." [Pl.'s Br., Doc. No. 18, p.8].  In support of this argument, Barrick attaches several emails between the Arbitrator and counsel for both Barrick and for Crescent.

On May 7, 2009, the Arbitrator sent the following email to counsel for both Barrick and for Crescent:

> At this time we would like to invite Barrick's controller to our offices to assist us in understanding certain data entry processes of the business.  We would like this to occur early next week if possible.  Please advise.  We will <u>not</u> be disclosing to her any of our calculated running balances.

[Pl.'s Ex. B, Doc. No. 18, p.5 (emphasis in original)]. In response to Barrick's counsel asking to be present at that meeting, the Arbitrator responded as follows - also on May 7, 2009:

> I would not think so. That would add pressure to her that is not warranted for what we are seeking to understand at this time. Having been through the data we desire to understand more about the customer payment cycle Barrick employs. It is nothing that she will have to 'prep' for or that she should feel stressed/nervous about. Anticipating both your desires to be at any meeting, I confirm to you that we will not be sharing any form of balance information with her, such that one side would feel at an advantage over the other.

*Id*. at pp.4-5. Counsel for Crescent was also copied on that email, but no evidence has been presented by the Defendants that their counsel objected to this purported "ex parte" communication between Morton and the Arbitrator. As no objection to this procedure was lodged by either party, the Arbitrator met with Morton on May 11, 2009.

Only one day after meeting with Morton - on May 12, 2009 - the Arbitrator extended a similar invitation to Crescent as that previously extended to Barrick. The following email was sent by the Arbitrator to counsel for Crescent - a copy of which was sent to counsel for Barrick as well:

> We would like to extend an invite for your client to come to our offices to assist us in understand [*sic*] the procedures employed by Crescent and the materials presented to us. In similar fashion to our meeting with Vickie [Morton], we wish to understand the procedures and thought processes employed by Crescent. Attorney presence is not required. We have availability Wed or Thursday if that is convenient for your client. Please advise.

*Id*. at p.3. That same day - again, May 12, 2009 - counsel for Crescent responded as follows:

> Thanks [Arbitrator]. *I think your approach is wise*. I will have my client contact you to meet. I will not be present, as I assume [counsel for Barrick] will not be either.

*Id*. at p.2 (emphasis added).

In *Order of Ry. Conductors and Brakemen v. Clinchfield R. Co.*, 407 F.2d 985, 988 (6th Cir. 1969), the Sixth Circuit held that parties in arbitration waive their right to complain about defects in the arbitration process if such objections are not raised at that time:

> It is also well settled that defects in proceedings prior to or during arbitration may be waived by a party's acquiescence in the arbitration with knowledge of the defect. Moreover, if the impeaching party's own action contributes to a variance from the prescribed procedure, such party may be estopped to complain of the variance.

Though *Clinchfield* was decided by the Sixth Circuit over forty years ago, its holding has been routinely relied upon by the Sixth Circuit in recent opinions.[1]

Counsel for Crescent was copied on *all* emails sent by the Arbitrator regarding his desire to meet and speak "ex parte" with Morton, yet did not raise an objection to this procedure despite the language in paragraph four of the arbitration agreement. Indeed, counsel for Crescent *explicitly agreed* to follow a similar course of conduct with his own client, stating to the Arbitrator that "I think your approach is wise." [Pl.'s Ex. B, Doc. No. 18, p.2]. On these facts, the Court holds that the Defendants have waived any objection they may have had to the Arbitrator's purported "ex parte" communications with Ms. Morton.

The Defendants' second argument in support of their motion to vacate - that the arbitrator exceeded his powers as outlined in the Arbitration Agreement [*See* Doc. No. 17, pp.24-25], is similarly without merit. Even assuming, *arguendo*, that the Arbitrator did exceed his powers as outlined in the Arbitration Agreement by meeting ex parte with Ms. Morton - a holding this

---

[1] *See, e.g., R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Assoc. Local Union No. 33*, 335 Fed. Appx. 516, 522 (6th Cir. June 18, 2009) (Clay, J., dissenting); *Armco Employees Independent Fed., Inc. v. AK Steel Corp.*, 149 Fed. Appx. 347, 352 (6th Cir. Aug. 17, 2005) (rehearing en banc denied); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003); *Detroit Newspaper Agency v. Teamsters Local No. 372*, 1994 WL 714343, *1 (6th Cir. Dec. 22, 1994).

Court does not reach today - the Defendants have waived this argument as outlined by the Sixth Circuit in *Clinchfield* by their own acquiescence to the Arbitrator's course of conduct. The Defendants' arguments to the contrary are without merit.

   III. <u>The Arbitrator's Claimed Improper Evidentiary Procedures</u>.

In their final argument in support of vacating the arbitration award, the Defendants argue that the Arbitrator engaged in an "improper application of evidentiary procedures." [Def.'s Br., Doc. No. 18, p.24]. The Court disagrees. Before the Arbitrator, the Defendants argued as follows:

> Crescent was charged for at least 25,591 gallons of fuel that were actually never delivered. The proof of this was delivered in the documentary evidence supplied to the Arbitrator. The Sales Agreement was entered into on February 9, 2005. The beginning inventory that was taken on February 11, 2005 at approximately 3:07 p.m. reflects that the beginning inventory of fuel was 13,187 gallons. Approximately two years into the Agreement, Crescent became suspicious that it was being charged for fuel that was not being delivered. On March 28, 2007, a stick reading of the tanks was taken by B&R Trucking, Inc[.] showing a reading of nine inches. All of the gallons purchased, plus the beginning inventory and the end inventory were factored into the equation. It showed that Crescent had been shorted by Barrick on the delivery of 25,591 gallons of gas that it had paid for.

*Id.* at pp.25-26. The Arbitrator rejected the Defendants' claims that they had charged for these 25,591 gallons of purportedly undelivered fuel.

In its motion [Doc. No. 18], the Defendants primarily focus upon a single paragraph in the Arbitration Award:

> For [Arbitrator] the issue is whether or not the variance can be tied to an action caused or created by the Plaintiff. *Temperature, fuel/water tank content, evaporation, leakage, non-metered fuel withdrawals, accuracy of the DPR report for gallons sold, cutoff dates and times are some of the factors unrelated to the Plaintiff which can contribute to the variance concluded by the formula above.*

[August 15, 2009 Arbitration Award Report, Def.'s Ex. 8, Doc. No. 18, p.9]. Relying upon this

10

section of the award, the Defendants argue as follows:

> If geology and petroleum engineering were going to be relied upon by the
> Arbitrator, a Certified Public Accountant by trade, then Crescent should have been
> allowed the opportunity to present experts in the field to rule out any other
> explanation for the shortage other than Barrick's breach of the Agreement. The
> Arbitrator had no authority whatsoever to consider subjects for which he has no
> basis of expertise. The Arbitration Order does not allow for the Arbitrator to
> delve into subjects like t]emperature [*sic*], evaporation, and leakage to determine
> whether Crescent was shorted on the gasoline it had paid Barrick for.

[Def.'s Br., Doc. No. 19, pp.26-27].

This argument is without merit for several reasons. First, the Arbitrator *did not conclude that factors such as temperature, evaporation, and leakage were responsible for the Defendants' alleged fuel discrepancy*. Rather, the Arbitrator's quoted language *supra* merely opined that *any number of factors* besides an intentional short-changing by Barrick could account for the discrepancy. Nowhere in the Arbitration Award does the Arbitrator engage in any sort of mathematical analysis of the temperature, evaporation, or leakage levels in Crescent's fuel tanks.

The analysis the Arbitrator *did* engage in relative to this argument, however - which the Defendants neglect to address in their briefing - *was* within the scope of the Arbitration Agreement. The analysis section of the Arbitration Award on this subject contains the following:

> [Arbitrator] notes several instances in which the discrepancies revolve around
> deliveries made at the very end of or beginning of a particular month. These are
> often termed cut-off issues as the data may not have been received by the
> Defendant from the Plaintiff at the time month end record keeping activities
> occur. Typically these are self-correcting in that the following month will include
> the data missed from the prior month and thus in total they are reconciled. *In the
> instant case, [Arbitrator] believes that it has observed cut-off issues in the
> Defendants reporting practices that were not properly accounted for in the
> subsequent month. . . .* Finally, [Arbitrator] believes that *in certain instances the
> Defendant failed to account for deliveries made in its reporting as noted and
> supported by shippers*. The analysis performed strongly suggests that the
> Plaintiffs delivery records. . . are accurate and reconcilable to the Defendants own

11

records with rational explanations. **Given the evidence provided and the analysis conducted, [Arbitrator] finds that any volume discrepancies that may exist are not readily attributable to the actions of the Plaintiff**.

[August 15, 2009 Arbitration Award Report, Def.'s Ex. 8, Doc. No. 18, pp.9-10 (emphasis added) (final emphasis in original)].

Thus, the Arbitrator *did not* conclude that factors such as evaporation, temperature, and tank leakage explained the purported discrepancy in fuel deliveries - factors which, arguably, *would* be beyond the scope of the Arbitrator's expertise. Rather, the Arbitrator found that the discrepancies were attributable to the Defendants' own shoddy accounting practices - a cause within the Arbitrator's expertise. The Defendants' arguments to the contrary are without merit.

The Defendants also argue that the Arbitrator "unilaterally adopted the liability standard that Barrick had to be 100% responsible for any fuel shortages before liability could be attached to them." [Def.'s Br., Doc. No. 18, p.27]. The Arbitrator made no such finding. Despite a lone, single statement in the conclusion section of the Arbitration Award that "the evidence provided [was] insufficient to conclude that the Plaintiff alone could have been the cause of the volume discrepancy," [*See* Arbitration Award Report, Def.'s Ex. 8, Doc. No. 18, p.10], the Arbitrator did not import an "all or nothing" damages standard into his analysis. Rather, as quoted *supra*, the Arbitrator simply found that "any volume discrepancies that may exist are not readily attributable to the actions of the Plaintiff." *Id*. Such does not amount to an impermissible evidentiary standard being required of the Defendants to prove their alleged shortages, and the Defendants arguments to the contrary are without merit.

CONCLUSION

Ultimately, none of the Defendants' arguments warrant setting aside the Arbitrator's

award in this case.  For the reasons explained above, the Court **DENIES** the Defendants' Motion to Vacate Arbitration Award [Doc. No. 17].

    **IT IS SO ORDERED**.


                        S/Sean F. Cox
                        Sean F. Cox
                        United States District Judge

Dated:  July 28, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 28, 2010, by electronic and/or ordinary mail.

                        S/Jennifer Hernandez
                        Case Manager